UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TRINA TRAVILLIAN,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 18-cv-02087-DMR

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 15, 21

Plaintiff Trina Travillian moves for summary judgment to reverse the Commissioner of the Social Security Administration's (the "Commissioner's") final administrative decision, which found Travillian not disabled and therefore denied her application for benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq*. The Commissioner cross-moves to affirm.

For the reasons stated below, the court denies Travillian's motion for summary judgment and grants the Commissioner's cross motion.

**I.    PROCEDURAL HISTORY**

On March 31, 2014, Travillian filed applications for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits, alleging a disability onset date of June 1, 2004. A.R. 105, 120, 295, 302. The Commissioner initially denied the applications on October 20, 2014 and again on reconsideration on March 19, 2015. A.R. 171-75, 176-71, 185-90, 191-96. On May 20, 2015, Travillian filed a request for a hearing before an Administrative Law Judge ("ALJ"). A.R. 197-99. ALJ Debra M. Underwood held a hearing on December 22, 2016. A.R. 16-36. At the hearing, Travillian amended her alleged onset date to March 31, 2014 and voluntarily withdrew her application for Title II benefits. A.R. 19. Therefore, the ALJ's opinion and current appeal relate solely to Travillian's Title XVI application. At the time of the hearing, Travillian was 49 years old. A.R. 89.

The ALJ issued a decision finding Travillian not disabled. A.R. 16-36. The ALJ determined that Travillian has the following severe impairments: bilateral arthritis of the knees; major depressive disorder; generalized anxiety disorder; post-traumatic stress disorder ("PTSD"); alcohol use disorder; cannabis use disorder; and a history of cocaine and heroin use disorder in reported remission. A.R. 22. The ALJ found that Travillian retains the following residual functional capacity ("RFC"):

> [T]he claimant . . . can stand and walk 4 hours in an 8-hour day; is able to occasionally squat, crouch, stoop, kneel, and climb stairs, ramps, or ladders; should not work at unprotected heights; and can perform simple, routine tasks in a work environment that is free of fast pace production requirements and involves only simple work-related decisions and few, if any, workplace changes.

A.R. 24. Relying on the opinion of a vocational expert ("VE") who testified that an individual with such an RFC could perform other jobs existing in the economy, including working as an inspector, an electronic worker, or a polisher, the ALJ concluded that Travillian is not disabled. A.R. 29-30.

The Appeals Council denied Travillian's request for review on February 12, 2018. A.R. 1-7. The ALJ's decision therefore became the Commissioner's final decision. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011). Travillian then filed suit in this court pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a mere scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir.1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th

Cir. 2006) (citation and quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

The court has reviewed and considered the entire record. For the purposes of brevity, only the evidence relevant to the court's decision is summarized here.

## III. ISSUES PRESENTED

Travillian challenges the ALJ's decision on several grounds. She argues that the ALJ erred in (1) assessing Travillian's credibility; (2) weighing the medical opinions; (3) failing to find that Travillian's impairments meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 416.920(d)) (the "Listings"); (4) assessing her RFC; and (5) relying on the VE's testimony.

## IV. DISCUSSION

### A. Travillian's Credibility

The ALJ found that Travillian's statements "concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence of record." A.R. 26. Travillian argues that the ALJ erred in discounting her credibility.

#### 1. Legal Standard

In general, credibility determinations are the province of the ALJ. "It is the ALJ's role to resolve evidentiary conflicts. If there is more than one rational interpretation of the evidence, the ALJ's conclusion must be upheld." *Allen v. Sec'y of Health & Human Servs.*, 726 F.2d 1470, 1473 (9th Cir. 1984) (citations omitted). An ALJ is not "required to believe every allegation of disabling pain" or other nonexertional impairment. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989) (citing 42 U.S.C. § 423(d)(5)(A)). However, if an ALJ discredits a claimant's subjective symptom testimony, the ALJ must articulate specific reasons for doing so. *Greger v. Barnhart*, 464 F.3d 968,

3

972 (9th Cir. 2006). In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "must specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Id*. at 972 (quotations omitted); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (stating that an ALJ must articulate reasons that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony"). The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

The determination of whether or not to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281 (citations omitted). First, the ALJ must determine whether or not there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of" the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc) (citation omitted). Absent affirmative evidence that the claimant is malingering, the ALJ must provide "specific, clear and convincing" reasons for rejecting the claimant's testimony. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The Ninth Circuit has reaffirmed the "specific, clear and convincing" standard applicable to review of an ALJ's decision to reject a claimant's testimony. *See Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014).

**2.      Analysis**

The ALJ provided four reasons for partially discounting Travillian's testimony. She found that (1) Travillian has received conservative treatment for her allegedly debilitating joint pain; (2) some of Travillian's symptoms may be attributed to external circumstances rather than a medical condition; (3) Travillian's described activities of daily living ("ADLs") are "not as limited as one would expect given [her] complaints of disabling symptoms and limitations"; and (4) Travillian did

4

not exhibit symptoms consistent with her alleged disabilities during her telephonic interview and administrative hearing.

The ALJ's first reason to discount Travillian's credibility is that she has received only conservative treatment for her alleged joint pain, as evidenced by her reliance on over-the-counter ("OTC") pain medications. A.R. 26. The ALJ also noted that Travillian's treatment records do not "reflect any evidence of steroid injections, physical therapy, or surgery referrals." A.R. 26. In assessing a claimant's credibility, the ALJ may consider "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Tommasetti*, 533 F.3d at 1039. In addition, "the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints . . . ." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (quoting Social Security Regulation 96-7p). The ALJ is correct that there is no evidence that Travillian received any non-medication treatment, such as surgery or physical therapy. Nor does Travillian offer any reason to explain the lack of more aggressive treatment. Travillian's relatively conservative treatment with medication is a clear and convincing reason to discredit Travillian's testimony that she is incapacitated.

Second, the ALJ discounted Travillian's credibility by observing that some of her psychological symptoms may be situational because she had recently lost family members and because her boyfriend abused her. A.R. 26. This is not a clear and convincing reason to discount her credibility. Determining whether symptoms are situational may well be relevant to an ultimate disability determination. However, a claimant may be truthful about the severity of his or her symptoms even if the symptoms are situational. Therefore, this reasoning is not applicable in a credibility analysis.

Third, the ALJ concluded that Travillian's self-reported ADLs are inconsistent with the alleged severity of her symptoms. A.R. 26. The ALJ cited Travillian's hearing testimony and function report and explained that Travillian reported being able to manage her personal care needs, prepare her own meals, complete household chores, and care for her grandchildren. A.R. 26. The ALJ also observed that Travillian attends a methadone clinic on a daily basis and receives weekly counseling, which "reflects [her] ability to keep appointments and maintain a schedule[]." A.R. 26.

While Travillian reported having severe social limitations, the ALJ noted that she regularly talks to her daughter, spends time with her grandchildren, attends family functions, goes to church, uses public transportation, goes shopping in stores, and leaves home alone. A.R. 23.

The ALJ mischaracterized Travillian's reported activities in some respects but not in others. In the function report, Travillian represented that she washes dishes and vacuums every other day for about two hours, but also said that she needs help with those chores because of her knee pain. A.R. 399. During the December 22, 2016 hearing, Travillian testified that she washes dishes, mops, and cleans the bathroom, but can work for at most 20 minutes before she needs to take an hour-long break because of her arthritis and menopause symptoms. A.R. 69. The function report and hearing testimony both reflect that Travillian has difficulty completing household chores and needs breaks and assistance from others. Similarly, Travillian wrote in the function report that she watches her grandchildren some days, including feeding them and changing their diapers, but did not indicate how often she does so. A.R. 398. Travillian testified at the hearing that she no longer wants to watch her grandchildren because she experiences sudden psychological symptoms. A.R. 78-79. These self-reports indicate at most that Travillian has intermittent care of her grandchildren; nothing in the record suggests she can do so regularly or without assistance from others. Therefore, the ALJ's discussion of these ADLs does not accurately summarize Travillian's testimony.

However, the record does support the ALJ's observation that Travillian has no difficulty managing her personal care needs. *See* A.R. 398. In addition, while Travillian testified that she no longer cooks, she also said that she can cook for herself but does not want to be expected to cook for other people. A.R. 69-70. Travillian reported that she has problems with her memory, particularly around remembering appointments, but Travillian's counselor at the methadone clinic confirms that she attends the clinic daily and goes to weekly counseling sessions. A.R. 63, 72-73, 636. With respect to her social limitations, Travillian said that she does not spend time with her family. However, she explained that it is because they do not like to be around her husband. A.R. 65-66. These apparent inconsistencies in Travillian's self-reports about her ADLs are a clear and convincing basis to discount her credibility.

Finally, the ALJ noted that she did not observe any of Travillian's reported psychological

symptoms during the hearing, and that the person who conducted Travillian's phone interview also reported normal psychological responses. A.R. 26, 375. While "[an] ALJ's observations of a claimant's functioning may not form the sole basis for discrediting a person's testimony," *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007), the court may consider an ALJ's personal observations of a claimant's demeanor in reviewing a credibility assessment. *See Thomas*, 278 F.3d at 960. Since the ALJ offered other valid reasons to partially discredit Travillian's credibility, the ALJ's personal observations of her demeanor may serve as an additional basis for an adverse credibility finding.

Where the ALJ offers both valid and invalid reasons in support of an adverse credibility finding, the court must evaluate whether the ALJ's errors were harmless. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). If the court finds error with respect to a portion of an ALJ's decision, it may nevertheless affirm the finding "so long as there remains substantial evidence supporting the ALJ's decision and the error 'does not negate the validity of the ALJ's ultimate conclusion.'" *Molina*, 674 F.3d at 1115 (quoting *Batson*, 359 F.3d at 1197). In other words, an ALJ's error is harmless where it is "inconsequential to the ultimate nondisability determination." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). "[I]n each case we look at the record as a whole to determine whether the error alters the outcome of the case." *Molina*, 674 F.3d at 1115.

In this case, the ALJ's finding that Travillian is not fully credible is supported by substantial evidence, despite the errors identified above. Travillian's relatively conservative treatment coupled with her inconsistent statements about her ADLs are documented in the record and specifically relate to her ability to perform work-related activities. *See Carmickle*, 533 F.3d at 1163 (finding that an ALJ's valid reasons are not "relatively minor" when they are "specific findings related to [the claimant's] ability to perform vocational functions"). Further, the ALJ's errors do not "negate the validity of [her] ultimate conclusion." *See Batson*, 359 F.3d at 1187. Even though the ALJ erred in considering whether Travillian's symptoms were situational because that reason does not logically relate to whether she is truthful about those symptoms, she offered other valid reasons to cast doubt on Travillian's veracity, such as the conservative nature of her treatment and her inconsistent reports about her ADLs. Therefore, that reason was at most duplicative of the other, valid reasons the ALJ

7

offered. The ALJ's overstatement about Travillian's ability to perform her ADLs also does not change the outcome. There is substantial evidence that Travillian can manage her personal care needs, cook for herself, manage a daily schedule, and socialize with others. These ADLs, standing alone, impugn Travillian's credibility as to the severity of her disabilities, and so the ALJ's error in overstating her abilities is immaterial. *See Molina*, 674 F.3d at 1113 ("Even where [a claimant's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.").

Accordingly, the court finds that the ALJ's partial adverse credibility determination is supported by substantial evidence.

### B. Weighing of the Medical Evidence

Regarding Travillian's physical impairments, the ALJ discussed the medical evidence and stated that she assigned great weight to the opinion of consultative examiner Omar Bayne, M.D. and significant weight to the opinions of the state agency medical consultants. A.R. 26-27. With respect to Travillian's mental impairments, the ALJ assigned great weight to the mental assessments of the state agency psychological consultants; substantial weight to the opinion of treating provider James M. Reichmuth, M.D; partial weight to the psychological consultative examination of Maria Kerosky, Ph.D.; and little weight to the mental evaluation of Katherine Wiebe, Ph.D. A.R. 27-28.

Travillian argues that the ALJ erred in assigning too little weight to the opinions of Drs. Kerosky and Dr. Wiebe and in assigning too much weight to the opinions of the state agency medical and psychological consultants.

#### 1. Legal Standard

Courts employ a hierarchy of deference to medical opinions based on the relation of the doctor to the patient. Namely, courts distinguish between three types of physicians: those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("non-examining physicians"). *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a non-examining

8

physician's opinion. *Id*.

The Social Security Act tasks the ALJ with determining credibility of medical testimony and resolving conflicting evidence and ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (1998). A treating physician's opinion, while entitled to more weight, is not necessarily conclusive. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). To reject the opinion of an uncontradicted treating physician, an ALJ must provide "clear and convincing reasons." *Lester*, 81 F.3d at 830; *see, e.g.*, *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (affirming rejection of examining psychologist's functional assessment which conflicted with his own written report and test results); *see also* 20 C.F.R. § 416.927(d)(2); SSR 96-2p, 1996 WL 374188 (July 2, 1996). If another doctor contradicts a treating physician, the ALJ must provide "specific and legitimate reasons" supported by substantial evidence to discount the treating physician's opinion. *Lester*, 81 F.3d at 830. The ALJ meets this burden "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725 (citation omitted). "[B]road and vague" reasons do not suffice. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). This same standard applies to the rejection of an examining physician's opinion as well. *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion alone cannot constitute substantial evidence to reject the opinion of an examining or treating physician, *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984), though a non-examining physician's opinion may be persuasive when supported by other factors. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (noting that opinion by "non-examining medical expert . . . may constitute substantial evidence when it is consistent with other independent evidence in the record"); *Magallanes*, 881 F.2d at 751-55 (upholding rejection of treating physician's opinion given contradictory laboratory test results, reports from examining physicians, and testimony from claimant). An ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa*, 143 F.3d at 1244. An opinion that is more consistent with the record as a whole generally carries more persuasiveness. *See* 20 C.F.R. § 416.927(c)(4).

## 2.      Analysis (Physical Impairments)

Dr. Bayne performed a consultative medical examination on September 23, 2014. A.R. 530-31. He observed that Travillian walked with an antalgic gait and had some difficulties with walking on her heels and toes, squatting, sitting, and standing. A.R. 530. He opined that she should be able to "stand and walk with appropriate breaks for four hours during an eight-hour workday"; "sit with appropriate breaks for six hours during an eight-hour workday"; and occasionally squat, crouch, stoop, kneel, and climb up and down stairs, inclines, ramps, or ladders. A.R. 530. State agency medical consultants B. Williams, M.D. and I. Herman, M.D. largely concurred with Dr. Bayne's functional assessments, except they both stated that Travillian could stand and walk for six hours during an eight-hour workday and Dr. Herman further opined that she could sit for four hours. A.R. 114, 146.

The ALJ assigned great weight to Dr. Bayne's opinion because it was based on objective medical findings and was consistent with the medical record as a whole. A.R. 27. She assigned significant weight to the opinions of the state agency medical consultants, except to the extent that they conflicted with Dr. Bayne's opinion. A.R. 27. She adopted the sitting, standing, and walking limitations assigned by Dr. Bayne because his opinions were based on personal observations. A.R. 27. The ALJ's RFC assessment reflects the physical limitations assessed by Dr. Bayne. A.R. 24.

Travillian argues that the ALJ erred in according significant weight to the opinions of the state agency medical consultants because they did not have a treating relationship with Travillian and did not personally exam her. Opp. at 15. However, Travillian does not explain how their opinions conflict with the medical evidence. State agency medical consultants are acceptable medical sources and administrative law judges are required to consider their opinions. 20 C.F.R. § 404.1513a(b)(1); *see also Tonapetyan*, 242 F.3d at 1149 (stating that the opinion of a non-examining medical expert "may constitute substantial evidence when it is consistent with other independent evidence in the record"). Further, the opinions of the state agency medical consultants are largely consistent with Dr. Bayne's opinion, and Travillian made no argument with respect to Dr. Bayne. To the extent that the opinions differed, the ALJ properly credited the physician who examined Travillian. *See Tonapetyan*, 242 F.3d at 1149 (finding that the opinion of an examining physician

"alone constitutes substantial evidence, because it rests on his own independent examination" of the claimant).

Accordingly, the court finds that the ALJ did not err in evaluating the medical opinions with respect to Travillian's physical impairments.

### 3. Analysis (Mental Impairments)

Dr. Kerosky and Dr. Wiebe each performed consultative psychological evaluations on August 27, 2014 and October 7, 2016, respectively. The ALJ discussed these opinions and gave Dr. Kerosky's opinion partial weight and Dr. Wiebe's opinion little weight. A.R. 27-28. She assigned higher weight to the mental assessments of the state agency psychological consultants, Eugene Campbell, Ph.D., and J. Flocks, M.D. Given that Drs. Campbell and Flocks contradicted the findings of the examining psychologists and assessed fewer limitations for Travillian's RFC, the ALJ was required to provide "specific and legitimate reasons" supported by substantial evidence to reject the opinions of the examining psychologists. *Lester*, 81 F.3d at 830.

#### a. Maria Kerosky, Ph.D.

On August 27, 2014, Dr. Kerosky performed a consultative psychological exam. A.R. 523-29. Dr. Kerosky took an extensive patient history and noted that Travillian is a "fair historian." A.R. 523-25. She performed a mental status examination and assessed diagnoses of major depressive disorder, PTSD, and substance use disorders (alcohol, cannabis, cocaine).[1] Dr. Kerosky noted that Travillian had difficulty hearing or understanding during the interview, and that her memory and attention appeared to be moderately impaired. A.R. 527. Travillian appeared to have a borderline fund of knowledge, impaired to borderline knowledge of conventional standards of behavior/judgment, and borderline abstract reasoning skills. A.R. 527. Dr. Kerosky assessed marked impairments in Travillian's abilities to follow complex/detailed instructions; adapt to changes in job routine; and withstand the stress of a normal workday. A.R. 527-28. She assessed moderate impairments in maintaining adequate attention/concentration and emotional stability/predictability, and mild to moderate impairments in following simple instructions;

---

[1] The ALJ found that Travillian's polysubstance use disorders were not material to the determination of disability. A.R. 22.

11

maintaining adequate pace and persistence to perform simple repetitive tasks; and communicating/interacting appropriately with coworkers, supervisors, and the public on a regular basis. A.R. 527-28.

The ALJ assigned significant weight to Dr. Kerosky's findings to the extent that she found Travillian "should be limited to performing simple, routine tasks in an environment limited from changes in job routine and stress." A.R. 27-28. However, the ALJ assigned reduced weight to "the remainder of Dr. Kerosky's findings, i.e. the claimant has social interaction limitations," because that limitation is "overly reliant on the claimant's inconsistent subjective complaints" and based on a one-time evaluation. A.R. 28.

Travillian argues that the ALJ erred in assigning partial weight to Dr. Kerosky's opinion because the ALJ "only gives one example of Dr. Kerosky's findings she dismisses, but essentially dismisses 'the remainder of Dr. Kerosky's findings.'" Mot. at 11. Travillian's argument misconstrues the ALJ's decision. The ALJ discounted Dr. Kerosky's findings about Travillian's social limitations but the rest of Dr. Kerosky's opinion is consistent with the RFC assessed by the ALJ. For example, Dr. Kerosky opined that Travillian has marked impairments in her ability to follow complex or detailed instructions, maintain adequate pace and persistence to perform complex tasks, adapt to changes in job routine, and withstand the stress of a routine workday. Travillian does not explain how the ALJ's limitations to "simple, routine tasks in an environment limited from changes in job routine and stress" does not account for these limitations. *See* Mot. at 12. Therefore, the ALJ only rejected Dr. Kerosky's findings as to Travillian's social limitations. As discussed above, the ALJ offered clear and convincing reasons to discount Travillian's credibility as to her social limitations. Correspondingly, Dr. Kerosky's findings as to Travillian's social limitations are undermined because they are based on Travillian's inconsistent subjective reports about those limitations. *See Tonapetyan*, 242 F.3d at 1149 (holding that if the ALJ properly discounts a claimant's credibility, then medical opinions premised on the claimant's subjective complaints may be disregarded).

However, to the extent that the ALJ discredited Dr. Kerosky's opinion because it was a one-time examination, that rationale is insufficient to discount her opinion in favor of the state agency

12

psychological consultants. In *Lester*, the Ninth Circuit reviewed an ALJ's decision to discount the opinion of an examining psychologist in favor of a non-examining source because the examiner's conclusions were based on "limited observation" of the claimant. *Lester*, 81 F.3d at 832. In holding that the ALJ erred, the court stated: "While this would be a reason to give less weight to [the examining psychologist's] opinion than to the opinion of a treating physician, it is not a reason to give preference to the opinion of a doctor who has *never* examined the claimant." *Id.* In this case, the ALJ discounted an examining source's opinion in favor of a non-examining source. There are no treating source opinions in the record. Under such circumstances, it is error to discredit an examining source opinion on the basis that it is a one-time examination. Accordingly, the court concludes that this is not a specific and legitimate reason supported by substantial evidence to reject Dr. Kerosky's opinion.

The harmless error doctrine applies to an ALJ's evaluation of medical opinions. *See Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015). Here, the ALJ properly discounted Dr. Kerosky's opinion to the extent that it was based on Travillian's inconsistent subjective reports about her social activities. The court found above that the ALJ did not err in assessing Travillian's credibility, and so there is substantial evidence supporting the ALJ's decision to discount Dr. Kerosky's opinion to the extent that it was based on Travillian's subjective reports. Although the ALJ erred in discounting Dr. Kerosky's opinion because it was based on a one-time evaluation, that error is immaterial. The ALJ properly discounted the portion of Dr. Kerosky's opinion that was inconsistent with the adverse credibility finding and the rest of the opinion is consistent with the RFC he ultimately assessed. Correcting the ALJ's error would not change the ultimate disability determination, and so the error is harmless.

In sum, the court finds that the ALJ did not err in weighing Dr. Kerosky's opinion.

### b. Katherine Wiebe, Ph.D

Dr. Wiebe performed a psychological evaluation on October 7, 2016. A.R. 543-60. She took an extensive patient history and administered a battery of psychological tests. She recorded that Travillian has severe impairments in her short- and long-term memory; visual and spatial organization; and executive functioning; moderate-to-severe impairments in her ADLs and social

13

functioning; and moderate impairments in her language, judgment, and insight. A.R. 559. Based on these impairments, Dr. Wiebe opined that Travillian has marked limitations her ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for two hour segments; perform at a consistent pace without an unreasonable number and length of rest periods; respond appropriately to changes in a routine work setting and deal with normal work stressors; complete a normal workday and workweek without interruptions from psychologically based symptoms; and maintain regular attendance and punctuality. A.R. 560. She assessed moderate limitations in Travillian's ability to understand, remember, and carry out very short and simple instructions; get along and work with others; interact appropriately with the general public; and accept instructions and respond appropriately to criticism from supervisors. A.R. 560.

The ALJ assigned little weight to Dr. Wiebe's opinion in part because the "overly restrictive evaluation is not consistent with [Travillian's] minimal mental health treatment." A.R. 28. Travillian asserts that Dr. Wiebe's opinion is "consistent with Plaintiff's mental health treatment because her findings are consistent with" Dr. Kerosky's opinion. Mot. at 10. However, Dr. Kerosky is not a treating provider, and so her opinion is not part of Travillian's treatment records. The evidence largely supports the ALJ's characterization of Travillian's mental health treatment. Most of the medical records relate to Travillian's non-mental health treatment, and mostly record normal mental status exams. *See* A.R. 507, 564, 599, 606, 612, 653, 647, 652. Travillian has occasionally presented for intakes with mental health professionals, but there is no record that she continued to seek treatment after those initial appointments. *See* A.R. 39-43, 569-83, 641-43. Travillian's counselor at the methadone clinic submitted a statement in support of Travillian's benefits application; however, the statement is largely addressed to Travillian's methadone treatments and not to her mental health care. A.R. 636. The ALJ could reasonably conclude that Travillian's "minimal mental health treatment" tends to show that Travillian is more functional and in less distress than described by Dr. Wiebe. Taken as a whole, the record substantially supports the ALJ's conclusion that Dr. Wiebe's opinion is inconsistent with the available medical evidence. Accordingly, the ALJ did not err in assigning little weight to Dr. Wiebe's opinion.

The other reasons cited by the ALJ are less convincing. First, she noted that Dr. Wiebe

14

prepared the report to support Travillian's disability application, but the Ninth Circuit has explicitly stated that "[t]he purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them." *Lester*, 81 F.3d at 832; *see also Ratto v. Secretary*, 839 F. Supp. 1415, 1426 (D. Or. 1993) ("The Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits."). While the Secretary "may introduce evidence of actual improprieties," *Lester*, 81 F.3d at 832, the ALJ in this case did not suggest or present evidence that Dr. Wiebe engaged in any misconduct. *See also Reddick*, 157 F.3d at 726 ("[I]n the absence of other evidence to undermine the credibility of a medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it."). Therefore, the fact that Dr. Wiebe prepared her report to support Travillian's disability application is not a specific and legitimate reason to discount her opinion.

Second, the ALJ discounted Dr. Wiebe's opinion on the basis that her report was not based on a treating relationship. While the Commissioner is correct that more weight is given to treating physicians, this is not a specific and legitimate reason to discredit the opinion of an examining physician where, as here, it does not conflict with a treating physician's opinion. *See* 20 C.F.R. § 404.1527 (discussing the relative weight assigned to medical opinions). Moreover, it makes no sense to cite this as a rationale for discrediting an examining physician in favor of the state agency psychological consultants, who also did not have a treating relationship with Travillian.

Third, the ALJ observed that Dr. Wiebe's report was prepared based on a one-time evaluation. This rationale is rejected for the same reasons stated above with respect to Dr. Kerosky's opinion.

Although the ALJ gave some invalid reasons to reject Dr. Wiebe's opinion, those errors were harmless. The reason credited by the court considers the evidentiary record as a whole and is entitled to significant consideration. *See* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Correcting the ALJ's legal errors would not change her evaluation of the extent to which Dr. Wiebe's opinion conflicted with the medical evidence and would not undermine the ultimate disability determination.

Accordingly, the ALJ did not err in rejecting Dr. Wiebe's opinion.

**C. Step Three and RFC Assessment**

Travillian argues that the ALJ erred in determining that her impairments do not meet or medically equal a Listing and in assessing her RFC. Travillian's arguments about these issues are entirely derivative of her arguments that the ALJ erred in assessing her credibility and in weighing the medical opinions. For the reasons stated above, the court finds no error on either issue. Therefore, Travillian's step three and step four arguments fail as well.

**D. VE Testimony**

Travillian argues that the ALJ erred in relying on the VE's testimony that Travillian could perform work as an inspector, electronics worker, or a polisher. Travillian provides the descriptions of those positions as they are listed in the Dictionary of Occupational Titles ("DOT") and summarily asserts that "these jobs involve frequent changes in a work environment, complex tasks, independent judgment, and likely production rates." Mot. at 23. She contends that even if the RFC assessed by the ALJ were accurate, a person with those RFC could not perform the jobs identified by the VE. *See id.*

Travillian's argument is not persuasive. "For a difference between an expert's testimony and the [DOT's] listings to be fairly characterized as a conflict, it must be obvious or apparent. This means that the testimony must be at odds with the [DOT's] listing of job requirements that are essential, integral, or expected." *Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016). None of the occupations identified by the VE contain requirements as to frequent changes in the work environment, complex tasks, independent judgment, or production rates. The court concludes that there was no conflict between the VE's testimony and the DOT.

**V. CONCLUSION**

For the foregoing reasons, the court denies Travillian's motion for summary judgment and grants the Commissioner's cross-motion. The Clerk shall enter judgment and close the case.

**IT IS SO ORDERED.**

Dated: March 23, 2020

Donna M. Ryu
United States Magistrate Judge

16